IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION


JAMES E. KELSAY                                                              PLAINTIFF


             v.                              CIVIL NO. 10-5216


MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                               DEFENDANT


**MEMORANDUM OPINION**

Plaintiff, James E. Kelsay, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claims for a period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) benefits under the provisions of Titles II and XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I.      Procedural Background:**

Plaintiff protectively filed his current applications for DIB and SSI on August 1, 2006, alleging an inability to work since August 19, 2005, due to a torn rotator cuff of the right shoulder, and right arm biceps muscle problems. (Tr. 85, 90, 108). An administrative hearing was held on March 13, 2008, at which Plaintiff appeared with counsel and testified. (Tr. 13-41).

By written decision dated September 9, 2008, the ALJ found that during the relevant time

period, Plaintiff had an impairment or combination of impairments that were severe. (Tr. 51). Specifically, the ALJ found Plaintiff had the following severe impairments: a right shoulder injury (torn rotator cuff and rupture of the long head of the biceps). However, after reviewing all of the evidence presented, he determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 52). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that while the claimant can frequently lift and/or carry ten pounds, and occasionally twenty pounds, sit, stand, or walk (with normal breaks) for eight hours in an eight hour work day, he should never reach overhead with his right arm. The claimant can only occasionally reach with either arm, and he can only occasionally reach overhead with his left arm. The claimant can only occasionally climb stairs, ramps, ladders, or scaffolds.

(Tr. 52). With the help of a vocational expert, the ALJ determined Plaintiff could perform work as a surveillance system monitor and a rental clerk. (Tr. 56).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which after reviewing additional evidence, denied that request on September 22, 2010. (Tr. 1-5). Subsequently, Plaintiff filed this action. (Doc. 1). On February 18, 2011, Plaintiff filed a Motion to Introduce New Evidence. (Doc. 8). This case is before the undersigned pursuant to the consent of the parties. (Doc. 5). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 9, 10).

**II.    Evidence Presented:**

At the administrative hearing held on March 13, 2008, Plaintiff, who was forty-eight years of age at the time, testified that he completed the ninth grade. (Tr. 16). The record reflects

Plaintiff's past relevant work consists of work as a laborer and a repairman. (Tr. 115).

Medical evidence dated prior to the relevant time period reveals that Plaintiff sought treatment for right shoulder pain beginning in 2002, after sustaining an injury at work; insomnia; and allergies. (Tr. 209-214, 216-223, 224-229). On December 2, 2002, Dr. Chris Murphy noted that a MRI of Plaintiff's right shoulder revealed no definitive evidence of a partial or complete tear of the right rotator cuff tendon; however, it did reveal an increased signal involving the biceps tendon at the level of the proximal right humeral diaphysis, which was consistent with either a partial tear or significant right biceps tendinitis. (211, 213-214). On December 9, 2002, Dr. B. Raye Mitchell noted Plaintiff reported that the steroid injection had worn off and that he was just not happy with his shoulder. At that time, Plaintiff agreed to undergo surgical intervention. (Tr. 216).

The medical evidence during the relevant time period reveals the following. On June 13, 2006, Plaintiff's chief complaints were listed as medication refill and insomnia. (Tr. 193). In the review of systems, Dr. Mark Bonner noted that Plaintiff experienced right shoulder pain of moderate severity with the associated symptoms of stiffness, exacerbation with lifting, and improved with rest. Upon examination, Dr. Bonner noted Plaintiff had right shoulder tenderness with moderate pain with motion; that Plaintiff's right arm had a torn biceps proximally that was tender to palpation; and that Plaintiff had no unusual anxiety or evidence of depression. Dr. Bonner diagnosed Plaintiff with chronic insomnia, chronic right biceps tendon rupture, and chronic rotator cuff rupture. Plaintiff was prescribed medication.

On July 10, 2006, Plaintiff complained of insomnia and pain. (Tr. 191, 234). In the review of systems, Dr. Bonner noted that Plaintiff experienced right shoulder pain of moderate

-3-

severity with the associated symptoms of stiffness, exacerbation with lifting, and improved with rest. Upon examination, Dr. Bonner noted Plaintiff had right shoulder tenderness with moderate pain with motion. Dr. Bonner indicated Plaintiff would need an orthopedic referral and diagnosed Plaintiff with chronic insomnia and chronic rotator cuff syndrome.

On October 11, 2006, Dr. Robert Redd, a non-examining medical consultant, completed a RFC assessment stating that Plaintiff could occasionally lift or carry fifty pounds, frequently lift or carry twenty-five pounds; could stand and/or walk for a total of about six hours in an eight-hour workday; could sit for a total of about six hours in an eight-hour workday; and could push or pull unlimited, other than as shown for lift and/or carry. (Tr. 195-202). Dr. Redd opined that postural, manipulative, visual, communicative or environmental limitations were not evident. Dr. Redd made the additional comments:

> This is a 46-year-old male with right shoulder dysfunction secondary to a torn right rotator cuff.
> Examination reveals right shoulder pain
> Physical RFC: 50 pound weight limit

(Tr. 202). On January 3, 2007, after reviewing the record, Dr. Bill F. Payne affirmed Dr. Redd's assessment. (Tr. 205)

On December 22, 2006, Plaintiff complained of neck pain and depression. (Tr. 232). In the review of systems, Dr. Bonner noted that Plaintiff experienced right shoulder pain of moderate severity and limited range of motion with the associated symptoms of stiffness, exacerbation with lifting, and improved with rest. Upon examination, Dr. Bonner noted Plaintiff had right shoulder tenderness with moderate pain with motion. Dr. Bonner noted that Plaintiff's sensation was grossly intact bilaterally; that Plaintiff's reflexes were symmetric bilaterally; and

AO72A
(Rev. 8/82)

that Plaintiff's cranial nerves II-XII were grossly intact. Dr. Bonner also noted that Plaintiff had a depressed affect. Dr. Bonner diagnosed Plaintiff with insomnia, muscle spasm and depression.

On February 14, 2007, Plaintiff complained of abdominal discomfort for the past three weeks. (Tr. 230-231). Plaintiff also reported that he was experiencing blood in his stool. A review of systems indicated that Plaintiff was not experiencing back or joint pain. Upon examination, Dr. Bonner noted that Plaintiff's extremities appeared normal. Plaintiff was diagnosed with hemorrhoids and rectal bleeding.

On May 14, 2008, Plaintiff underwent a consultative orthopedic evaluation performed by Dr. Alice M. Martinson. (Tr. 236-237). Dr. Martinson noted that according to Plaintiff's history and a review of the medical record, Plaintiff injured his right shoulder while lifting an extremely heavy tire on the job in 2002. Dr. Martinson noted that Plaintiff was found to have a rotator cuff tear and a rupture of the long head of the biceps. Plaintiff reported that he had had no treatment and that his Worker's Compensation claim was denied. Plaintiff reported that surgery had been recommended in the past, but due to a lack of insurance, no surgery had been performed. Plaintiff complained of constant pain and weakness in his right shoulder, particularly if he attempted to use it above shoulder level. Plaintiff also reported similar but less intense discomfort in his left shoulder. Dr. Martinson noted Plaintiff's medications consisted of tramadol, amitriptyline and zoloft. Upon physical examination, Dr. Martinson noted the following:

> He has visible atrophy of the right supraspinatus and deltoid muscles. Both acromioclavicular joints are prominent and moderately tender to pressure, more so on the right than on the left. He has alteration of contour of the right biceps consistent with rupture of the long head. Range of motion of the shoulders is as

> follows (R/L): flexion 150/170, abduction 90/150, external rotation 60/50, internal rotation 70/70. He has discomfort and moderate weakness with resisted abduction and external rotation of the right shoulder and no weakness of the left shoulder with these motions. He has moderate discomfort with forced adduction of the right shoulder and mild discomfort with this maneuver on the left. He has pain but minimal weakness with resisted elbow flexion on the right and no pain or weakness with resisted elbow flexion on the left. He is tender on the anterior aspect of his right shoulder in the area of the bicipital groove.

(Tr. 236). After reviewing imaging studies, Dr. Martinson opined that Plaintiff had clinical and imaging evidence of acromioclavicular arthritis, bilaterally, with an old rupture of the majority of the substance of the long head of the right biceps and rupture of the supraspinatus. Dr. Martinson assigned Plaintiff a twelve percent total body impairment rating based on the physical abnormalities predominately in the right shoulder.

On May 16, 2008, Dr. Martinson completed a Medical Source Statement of Ability To Do Work-Related Activities (Physical), opining Plaintiff could lift/carry up to ten pounds continuously, eleven to twenty pounds frequently, and twenty-one to fifty pounds occasionally. (Tr. 238-243). Dr. Martinson opined Plaintiff could sit, stand and walk for a total of eight hours each in an eight-hour work day, two hours without interruption. Dr. Martinson opined Plaintiff could never reach overhead with his right hand, but could occasionally reach overhead with his left hand; that Plaintiff could occasionally reach in all other directions, bilaterally; and that Plaintiff could frequently handle, finger, feel and push/pull, bilaterally. Dr. Martinson opined Plaintiff could frequently use foot controls. With regard to postural activities, Dr. Martinson opined Plaintiff could occasionally climb stairs, ramps, ladders, and scaffolds; and could frequently balance, stoop, kneel, crouch and crawl. Dr. Martinson noted Plaintiff could frequently be exposed to environmental factors and that he could perform activities of daily

living.

The record reflects that Plaintiff submitted additional medical evidence to the Appeals Council. Progress notes dated January 27, 2009, report Plaintiff's complaints of bilateral shoulder pain and weakness, right arm pain and lumbosacral spine pain. (Tr. 189). Upon examination, Dr. Bonner noted that Plaintiff's lower lumbar spine was tender to palpation, but that there was no paravertebral spasm. Plaintiff also had a negative straight leg raise and elevation tests. Dr. Bonner noted Plaintiff's left shoulder had tenderness and severe pain with motion; that Plaintiff's right shoulder had tenderness and severe pain with motion; and that Plaintiff had a right arm biceps defect. Dr. Bonner noted that lumbar spine x-rays revealed degenerative changes at L5-S1. Dr. Bonner noted that Plaintiff needed a MRI of the lumbar spine, as well as a referral to a specialist. Dr. Bonner diagnosed Plaintiff with shoulder bursitis or tendonitis, sub-optimal control; biceps tendon rupture, sub-optimal control; and disc degeneration, lumbar, sub-optimal control.

On June 3, 2009, Dr. Bonner completed a Lumbar Spine Questionnaire indicating that he had been treating Plaintiff one to two times a year for the past three years. (Tr. 185). Dr. Bonner indicated that Plaintiff's diagnoses consisted of lumbar disc degenerative disease, a biceps tendon rupture, and bilateral rotator cuff tears. Dr. Bonner opined Plaintiff's prognosis was poor. Dr. Bonner indicated that Plaintiff's objective signs consisted of a reduced range of motion in the lumbar spine and the shoulders bilaterally, tenderness, and muscle weakness. Plaintiff's pain was noted to constantly interfere with his attention and concentration. Dr. Bonner noted Plaintiff's medications caused drowsiness. Dr. Bonner opined that Plaintiff could sit, stand and walk for less than two hours out of an eight-hour workday; that Plaintiff would

need a job that permitted shifting of positions at will; and that Plaintiff would sometimes need to take unscheduled breaks. Dr. Bonner opined that Plaintiff could rarely lift and carry less than ten pounds; and that Plaintiff could never twist, stoop, crouch, squat, or climb ladders or stairs. Dr. Bonner further found that Plaintiff would have significant limitations with repetitive reaching. Dr. Bonner opined Plaintiff would miss more than four days per month due to his impairments.

In Plaintiff's motion to submit new and material evidence, Plaintiff submitted additional medical records, along with Plaintiff's counsel's letters regarding the additional medical evidence that was noted in the Appeals Council's denial but was not included in the transcript before the Court. This evidence includes a letter dated October 3, 2008, wherein Dr. Bonner reported Plaintiff had been seen in his office for severe shoulder pain, with restrictive movement, as well as left lower quadrant pain. (Doc. 8, Exhibit A). Dr. Bonner opined Plaintiff's shoulder pain and lower quadrant pain were both causing significant restriction in his ability to work. Dr. Bonner recommended that Plaintiff see an orthopedic specialist, as well as a general surgeon.

**III.    Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists

in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. McNamara v. Astrue, 590 F.3d 607, 610 (8th Cir. 2010).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir.2001); see also 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. See 20 C.F.R. §§ 404.1520, 416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work

experience in light of his residual functional capacity. See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520, 416.920.

## IV.   Discussion:

Plaintiff contends that the ALJ erred in concluding that the Plaintiff was not disabled. Defendant argues substantial evidence supports the ALJ's determination.

### A.   Motion for New and Material Evidence:

A court may remand a social security claim for consideration of additional evidence "only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." Hepp v. Astrue, 511 F.3d 798, 808 (8th Cir.2008) (quoting 42 U.S.C. § 405(g)). "To be material, new evidence must be non-cumulative, relevant, and probative of the claimant's condition for the time period for which benefits were denied, and there must be a reasonable likelihood that it would have changed the Secretary's determination." Woolf v. Shalala, 3 F.3d 1210, 1215 (8th Cir.1993).

In the ALJ's decision of September 9, 2008, the ALJ expressly noted that the time period under consideration was August 19, 2005, through September 9, 2008. The only new medical evidence that was not made part of the record by the Appeals Council is a letter from Dr. Bonner, dated October 3, 2008. A review of this evidence reveals that Dr. Bonner found Plaintiff's shoulder impairment restricted Plaintiff's movement; that Plaintiff needed to be seen by an orthopedic specialist; and that Plaintiff needed to be seen by a general surgeon for left lower quadrant pain. As will be detailed below, Plaintiff underwent a consultative orthopedic evaluation in May of 2008, and the record shows that the ALJ credited that physician's findings and included the limitations found in the evaluation in the RFC. With regard to Plaintiff's left

lower quadrant pain, with the exception of complaining of some abdominal pain in February of 2007, the record is void of any complaints by Plaintiff regarding problems associated with lower quadrant pain during the relevant time period. It is also noteworthy that in January of 2009, Dr. Bonner indicated that Plaintiff's abdomen was "soft, non-tender without organomegaly or masses." Surely, if Plaintiff was having such significant pain as described by Dr. Bonner in October of 2008, without treatment Plaintiff would have continued to have such problems just three months later. The Court finds this evidence is not material, as there is no reasonable likelihood that it would have changed the ALJ's decision. Thomas v. Sullivan, 928 F.2d 255 (8th Cir. 1991).

### B.   Subjective Complaints and Credibility Analysis:

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the United States Court of Appeals for the Eighth Circuit observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the administrative record, it is clear that the ALJ properly evaluated Plaintiff's subjective complaints. Although Plaintiff contends that his impairments were

-11-

disabling, the evidence of record does not support this conclusion.

With regard to Plaintiff's right shoulder and arm impairments, the ALJ pointed out that while Plaintiff did sustain an injury to his right arm in 2002, and that Dr. Mitchell indicated that Plaintiff would be scheduled to undergo surgical repair, the medical evidence failed to show that Plaintiff underwent surgical intervention. The ALJ pointed out that the record was void of any medical treatment for Plaintiff's right upper extremity from December 2002, until June of 2006, which is inconsistent with Plaintiff's allegations of continuous pain.[1] See Novotny v. Chater, 72 F.3d 669, 671 (8th Cir. 1995) (per curiam) (failure to seek treatment inconsistent with allegations of pain). The medical evidence reveals that Dr. Bonner recommended Plaintiff be examined by an orthopedic specialist, which in fact was done in May of 2008. After examining Plaintiff, Dr. Martinson opined that Plaintiff had limitations with the use of his extremities, which the ALJ included in his RFC finding, as will be discussed more thoroughly below. After reviewing the entire evidence of record, the Court finds substantial evidence to support the ALJ's determination that Plaintiff does not have a disabling right upper extremity impairment.

While Plaintiff alleged an inability to seek treatment due to a lack of finances, the record is void of any indication that Plaintiff had been denied treatment due to the lack of funds. Murphy v. Sullivan, 953 F.3d 383, 386-87 (8th Cir. 1992) (holding that lack of evidence that plaintiff sought low-cost medical treatment from her doctor, clinics, or hospitals does not support plaintiff's contention of financial hardship).

With regard to Plaintiff's alleged depression, the medical evidence reveals that in

---

[1] While Plaintiff argued in his brief that he began treatment with Dr. Bonner in January of 2005, a review of those medical records revealed that Plaintiff sought treatment for insomnia and heartburn. (Tr. 228). Plaintiff saw Dr. Bonner again in March of 2005, at which time he was treated for nasal congestion and allergies. (Tr. 229).

December of 2006, Plaintiff complained of depression that was gradually worsening. Dr. Bonner started Plaintiff on Zoloft and treatment notes from February of 2007, and January of 2009, fail to mention Plaintiff's complaints of depression. The record simply fails to show that Plaintiff sought on-going and consistent treatment for any mental health impairment. Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001) (holding that lack of evidence of ongoing counseling or psychiatric treatment for depression weighs against plaintiff's claim of disability). After reviewing the entire evidence of record, the Court finds substantial evidence to support the ALJ's determination that Plaintiff does not have a disabling mental impairment.

Plaintiff's subjective complaints are also inconsistent with evidence regarding his daily activities. In a Function Report dated September 14, 2006, Plaintiff indicated that he spent his day taking care of his seventeen month old child while his girlfriend was at work. (Tr. 123). Plaintiff also indicated that with the exception of having some difficulty using his right shoulder when he dressed, he had no problems with his personal care. Plaintiff indicated that he was able to fix simple meals; to use a riding lawn mower to mow his lawn for a couple of hours every two weeks; and to go outside daily to walk and drive a car. Plaintiff indicated that he spent time visiting, watching television, and just sitting outside with others daily. Plaintiff indicated that he was able to go to church twice a week, and to go grocery shopping with his girlfriend. Plaintiff testified at the administrative hearing that he continued to take care of his son, now three, during the day, which included changing his diapers and feeding him. (Tr. 28). This level of activity belies Plaintiff's complaints of pain and limitation and the Eighth Circuit has consistently held that the ability to perform such activities contradicts a Plaintiff's subjective allegations of disabling pain. See Hutton v. Apfel, 175 F.3d 651, 654-655 (8 Cir. 1999)

-13-

AO72A
(Rev. 8/82)

(holding ALJ's rejection of claimant's application was supported by substantial evidence where daily activities– making breakfast, washing dishes and clothes, visiting friends, watching television and driving-were inconsistent with claim of total disability).

Therefore, although it is clear that Plaintiff suffers with some degree of pain, he has not established that he is unable to engage in any gainful activity. See Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000) (holding that mere fact that working may cause pain or discomfort does not mandate a finding of disability). Neither the medical evidence nor the reports concerning his daily activities support Plaintiff's contention of total disability. Accordingly, we conclude that substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were not totally credible.

**C.    RFC Assessment:**

We next turn to the ALJ's assessment of Plaintiff's RFC. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth

specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

In the present case, the ALJ considered the medical assessments of examining agency medical consultants, Plaintiff's subjective complaints, and his medical records when he determined Plaintiff could perform work at the light level with some non-exertional limitations. In support of this RFC, the ALJ relied upon a medical source statement completed by Dr. Martinson, an orthopedic surgeon in May of 2008.

After examining Plaintiff and reviewing imaging studies, Dr. Martinson opined Plaintiff could sit, stand and walk for a total of eight hours each in an eight-hour work day, two hours without interruption. Dr. Martinson opined Plaintiff could never reach overhead with his right hand, but could occasionally reach overhead with his left hand; that Plaintiff could occasionally reach in all other directions, bilaterally; and that Plaintiff could frequently handle, finger, feel and push/pull, bilaterally. Dr. Martinson opined Plaintiff could frequently use foot controls. With regard to postural activities, Dr. Martinson opined Plaintiff could occasionally climb stairs, ramps, ladders, and scaffolds; and could frequently balance, stoop, kneel, crouch and crawl. Dr. Martinson noted Plaintiff could frequently be exposed to environmental factors and that he could perform activities of daily living.  When determining Plaintiff's RFC, the ALJ stated that he credited Dr. Martinson's findings and included all of the limitations in the RFC.

While Plaintiff submitted a lumbar spine assessment completed by Dr. Bonner in June of 2009, eight months after the ALJ rendered his decision, the record fails to show that Plaintiff complained of back pain during the relevant time period.  Based on our above discussion of the medical evidence and Plaintiff's activities, the Court finds substantial evidence of record to support the ALJ's RFC determination.

**D.     Hypothetical Question to the Vocational Expert:**

We now look to the ALJ's determination that Plaintiff could perform substantial gainful employment within the national economy. We find that the hypothetical the ALJ posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole.[2]  See Long v. Chater, 108 F.3d 185, 188 (8th Cir. 1997); Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996).  Accordingly, we find that the vocational expert's opinion constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff is not disabled as he is able to perform work as a surveillance system monitor and a rental clerk. See Pickney, 96 F.3d at 296 (testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

**V.     Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision should be affirmed.  The undersigned further finds that the Plaintiff's Complaint should be dismissed with prejudice.

DATED this 2nd day of February 2012.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

---

[2] The ALJ sent interrogatories to the vocational expert who opined that the hypothetical individual would be able to perform work in the national economy.  (Tr. 164-174).  The ALJ then sent the vocational expert's finding to Plaintiff's counsel for review.  (Tr. 178).